**Dymeck v. Rajjoub**

C.P. of Lycoming County, No. 12-00550

BUTTS, *J.*, Dec. 2, 2014—

## I. Background

From July 23, 2010 to September 16, 2010, plaintiff Judy J. Dymeck was a patient in the Williamsport Hospital, located in Lycoming County. On September 16, 2010, Plaintiff was transferred to Select Specialty Hospital, located in Montour County. On September 19, 2010, plaintiff was transferred to Geisinger Medical Center, also located in Montour County.

On August 29, 2014, plaintiffs settled with the following defendants: Rodwan K. Rajjoub, M.D., Lalita Mittal, M.D., Stuart M. Olinsky, M.D., Clyde M. Finch, M.D., Thomas E. Cullen, D.O., the Williamsport Hospital, the Williamsport Hospital and Medical Center, the

Williamsport Hospital Foundation, NCPHS Foundation, NCPHS Health Education and Research Foundation. The aforementioned defendants will be referred to as the "Williamsport-related defendants." The terms of the settlement are contained in a document titled "Joint Tortfeasor Release" (Joint Tortfeasor Release).

On October 22, 2014, defendants Tina M. Jacobs, D.O., Jagdeep K. Mehr, M.D., and Larry E. Bohner, II, P.A.-C. filed an answer with amended new matter and new matter cross-claims to plaintiffs' third amended complaint. In the answer, defendants Jacobs, Mehr, and Bohner asserted a cross claim against the Williamsport-related defendants.

On October 22, 2014, a motion to transfer venue from Lycoming County to Montour County (motion to transfer) was filed by defendants Jacobs, Mehr, Bohner, Geisinger Medical Center, Geisinger Health System Foundation, and Select Specialty Hospital. These defendants will be referred to as the "Select-related defendants."

Also on October 22, 2014, the Select-related defendants filed a motion to compel the production of the settlement agreement between plaintiffs and the williamsport defendants (motion to compel).

On October 29, 2014, defendant Select Specialty Hospital filed an answer and amended new matter to plaintiffs' third amended complaint. In the answer, defendant Select Specialty Hospital asserted a cross claim against the Williamsport-related defendants. Because they assert the same claim, defendant Select Specialty Hospital's answer and defendants Jacobs, Mehr, and Bohner's answer will be referred to the "answer."

The Williamsport-related defendants filed preliminary objections to the answer. The objections included a

demurrer to the cross claim.

On November 17, 2014, the Select-related defendants filed a motion for leave to file amended answer with new matter (motion for leave). On December 2, 2014, after argument, this court granted the motion for leave.

## II. Discussion

### A. Preliminary Objections

Williamsport-related defendants argue that the cross claim is legally insufficient because they are not joint tortfeasors with the Select-related defendants. Defendant Olinsky argues that the defendants are not joint tortfeasors because the plaintiff's move to Select Specialty Hospital provides a reasonable basis to apportion the alleged injuries. Defendant Olinsky contends that the Williamsport-related defendants and the Select-related defendants cannot be considered joint tortfeasors because "the alleged harm to the plaintiff is severable as to time and alleged injury." Defendants the Williamsport Hospital, the Williamsport Hospital and Medical Center, the Williamsport Hospital Foundation, NCPHS Foundation, and NCPHS Health Education and Research Foundation argue that they are not joint tortfeasors with the Select-related defendants because the plaintiffs claim that the injury which occurred at the Williamsport Hospital was separate from the injury which occurred at Select Specialty Hospital. Defendant Rajjoub argues that the condition of the Plaintiff upon her arrival to Select Special Hospital provides a reasonable basis to apportion the alleged injuries.

Select-related defendants argue that the Williamsport-related defendants recognize that joint liability may come into play as evidenced by their entry into the joint tortfeasor release. Select-related defendants also note that

the plaintiffs allege the defendants are jointly and severally liable in the third amended complaint.

"The question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Booze v. Allstate Ins. Co.*, 750 A.2d 877, 878-79 (Pa. Super. 2000).

Defendants are not joint tortfeasors if the harm to the plaintiff is capable of apportionment. *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1027 (Pa. Super. 2005). "If the tortious conduct of each of two or more persons is a legal cause of harm that cannot be apportioned, each is subject to liability for the entire harm, irrespective of whether their conduct is concurring or consecutive." *Id.* (quoting Restatement (Second) of Torts § 879). "It is the function of the court to determine whether the harm to the plaintiff is capable of apportionment among two or more causes." *Lasprogata v. Qualls*, 397 A.2d 803, 806 (Pa. Super. 1979).

"If two or more causes combine to produce a single harm which is incapable of being divided on any logical, reasonable, or practical basis, and each cause is a substantial factor in bringing about the harm, an arbitrary apportionment should not be made." *Neal*, 882 A.2d at 1027.

In determining whether the harm to a plaintiff is capable of apportionment, that is, whether the defendants are separate or joint tortfeasors, courts consider several factors:

the identity of a cause of action against each of two or more defendants; the existence of a common, or

like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential; responsibility of the defendants for the same *injuria* as distinguished from the same *damnum*.

*Id.*

The above factors do not "establish a single, cumulative test of apportionability." *See Glomb v. Glomb*, 530 A.2d 1362, 1366 (Pa. Super. 1987). The factors are not "an exhaustive list of independent tests." *See id.* "The determination of whether to allow apportionment is entirely a practical inquiry into the circumstances of each case. In some cases, reference to one or more of the factors might aid the inquiry." *Id.*

"Most personal injuries are by their very nature incapable of division." *Capone v. Donovan*, 480 A.2d 1249, 1251 (Pa. Super. 1984).

In their complaint, plaintiffs repeatedly refer the alleged injuries as "injuries to the nerve and spinal cord."[1] The complaint does not allege that a certain injury to the nerves

---

1. "The carelessness and negligence of defendants, jointly and severally, as described herein, increased the risk of harm to Judy J. Dymeck and did, in fact, cause her to suffer catastrophic, permanent and irreversible nerve and spinal cord damage resulting in paralysis of all four extremities and a state of quadriplegia." Third amended complaint ¶ 122. "As a direct and proximate result of the negligence of defendants and each of them, jointly and severally, as described herein, Judy J. Dymeck needlessly suffered catastrophic and permanent injuries to the nerves and spinal cord resulting in paralysis of all four extremities with resultant quadriplegia." *Id.* ¶ 124. "As a result of the negligence and fault of defendants, plaintiff Judy J. Dymeck, experienced irreversible nerve and/or spinal damage causing paralysis of all upper and lower extremities consistent with the diagnosis of permanent quadriplegia...." *Id.* ¶ 252.

and spinal cord occurred at the Williamsport Hospital and a separate injury to the nerves and spinal cord, or aggravation of the Williamsport injury, occurred at Select Specialty Hospital. The complaint provides no basis to divide "injuries to the nerves and spinal cord." When the injuries are viewed simply as injuries to the nerves and spinal cord, there is no logical basis for apportionment. Medical evidence may provide more specific information about the injuries and in doing so provide a logical basis for apportionment. *See Martin v. Owens-Corning Fiberglas Corp.*, 528 A.2d 947, 950 (Pa. 1987) (noting that jury was not provided with expert testimony upon which it could reasonably apportion the injury); *Corbett v. Weisband*, 551 A.2d 1059, 1079 (Pa. Super. 1988) (noting party which has burden of presenting evidence of such a nature that damages could be apportioned). However, at this stage, the court finds that there is not a logical basis for apportionment.

B. Motion to Transfer Venue

Select-related defendants move for a transfer of venue under the doctrine of *forum non conveniens*. They move for a transfer because it would take defendant Jacobs an hour and a half to travel to Lycoming County Courthouse but only an hour to travel to Montour County Courthouse. Moreover, it would take defendants Merh and Bohner 40 minutes to travel to Lycoming County Courthouse but only five minutes to travel to Montour County Courthouse. Select-related defendants argue that the increased travel time is significant because the hospitalists will be forced to spend more time away from their patients. Additionally, Select-related defendants argue that Montour County is the more appropriate venue for the case since the Williamsport-related defendants have settled. They argue that the intent of the venue rule for professional liability

claims (Pa. R.C.P. No. 1006) will be circumvented if the case is not transferred to Montour County.

In opposing the motion, the plaintiffs argue that the Select-related defendants have ample time to schedule around the trial. Plaintiffs also argue that increased travel time does not affect patient care because the hospitalists will not be able to meet their inpatient responsibilities on trial days even if the trial is in Montour County.

"[A] trial court...must give deference to the plaintiff's choice of forum in ruling on a petition to transfer venue." *Cheeseman v. Lethal Exterminator*, 701 A.2d 156, 162 (Pa. 1997). "The issue is whether the choice of forum is oppressive or vexatious to the defendant." *Id.* n. 6. "[T]he defendant may meet his burden by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute. But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him." *Id.* at 162.

Select-related defendants have not shown that Lycoming County is oppressive or vexatious. Lycoming County borders Montour County. The court finds that an extra 30 to 35 minutes of travel is not oppressive or vexatious. Select-related defendants' argument that the increased travel time will harm patient care is not convincing because, as the plaintiffs note, the defendants have ample time to make arrangements to ensure their patients receive proper care.

The court does not agree that the intent of the venue rule for medical professional liability claims will be circumvented if the case remains in Lycoming County. "If the action to enforce a joint or joint and several liability against two or more defendants includes one or more medical professional

liability claims, the action shall be brought in any county in which the venue may be laid against any defendant under subdivision (a.1)." Pa. R.C.P. No. 1006(c)(2). "[A] medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose." Pa. R.C.P. No. 1006(a.1). The prevention of forum shopping is purpose of the venue rule for medical professional liability claims. *See Pasquariello v. Godbout,* 72 Pa. D. & C.4th 129, 137 (C.P. Northampton 2005). There is no evidence that the plaintiffs have forum shopped. As Select-related defendants note, Lycoming County was a proper venue when the plaintiffs initiated their suit.

Finally, the court would be discouraging settlement by permitting a transfer under these facts. Plaintiffs would be less inclined to settle with defendants if they knew that their case would be transferred to another county as a result of the settlement. For the foregoing reasons, the court denies the Select-related defendants' motion to transfer venue.

C. Motion to Compel Production of Joint Tortfeasor Release

Select-related defendants argue that they are entitled to a copy of the joint tortfeasor release because it is discoverable. They argue that the release is needed "to ensure fair apportionment of any damages awarded at trial, as moving defendants may be entitled to an offset depending upon the terms of the release." Select-related defendants also argue that the release is discoverable because it may be admissible at trial. They note that the release is admissible if it contains an alliance between the plaintiffs and the Williamsport-related defendants. They argue that the release is needed to "comprehend and

address any potential bias/prejudice that its terms may engender or even require."

Plaintiffs argue that select-related defendants are not entitled to a copy of the joint tortfeasor release because the release is not discoverable. They argue that the release is not discoverable because it is not relevant to any claims or defenses in this case. According to the plaintiffs, the "contention that release is discoverable for apportionment of damages purposes is unavailing because any molding of the verdict will be done only after a verdict has been reached."

Plaintiffs also argue that the release is not admissible. Plaintiffs argue that the release is not admissible "because there is no evidence that the Release contains any secret alliances or financial incentives for the settling defendants."

Plaintiffs argue that select-related defendants should not be allowed to benefit from the information that can be obtained from the release. Finally, plaintiffs argue that to meet the policy goal of promoting settlement, parties must be able to "maintain the sanctity of their settlement."

The court agrees with the plaintiffs' argument that the release is not discoverable. Select-related defendants do not need to know the contents of the release to ensure a fair apportionment of damages. Pennsylvania law provides for a fair apportionment.[2]

---

2. "Pennsylvania cases hold that even though he has settled with the plaintiff and obtained a pro-rata release, a defendant must nevertheless participate in the trial so that the jury may determine the issues of joint or sole liability." *Nat'l Liberty Life Ins. Co. v. Kling P'ship*, 504 A.2d 1273 (Pa. Super. 1986). "A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid." 42 Pa.C.S. § 8326.

Select-related defendants are entitled to know whether the release allies the plaintiffs and the Williamsport-related defendants. "[W]here an agreement clearly allies two or more parties against another, such that a clear potential for bias exists which would not otherwise be apparent to the factfinder, that part of the agreement, or at least the existence of the reason for the potential bias, must be conveyed to the factfinder." *Hatfield v. Continental Imports*, 610 A.2d 446, 452 (Pa. 1992). The court has reviewed the joint tortfeasor release, and it has determined that the release does not create an alliance between the Williamsport-related defendants and the plaintiffs. If the select-related defendants were allowed to review the entire release to look for bias, they would be able to review information that this court has deemed undiscoverable.

## III. Conclusion

At this stage, there is no logical basis to apportion the injuries alleged in the complaint. The time it takes for the select-related defendants to travel to Lycoming County Courthouse is not oppressive or vexatious. The joint tortfeasor release is not discoverable because a fair apportionment of damages is provided by Pennsylvania law. The release does not create an alliance between the plaintiffs and the Williamsport-related defendants.

## ORDER

And now, this 2nd day of December 2014, based upon the foregoing opinion, the preliminary objections to the answers filed October 22, 2014 and October 29, 2014 are hereby overruled. Furthermore, the motion to transfer venue and the motion to compel production of settlement agreement are hereby denied.